Filed 2/28/24  Moran v. Fusion Sign & Design CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DAENA SEGURA MORAN, | C095045 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CV-UOE-2020-0007441) |
| v. | |
| FUSION SIGN & DESIGN, INC., | |
| Defendant and Appellant. | |

This is a putative wage and hour class action lawsuit brought by plaintiff Daena Segura Moran against her former employer, defendant Fusion Sign & Design, Inc. (Fusion).[1]  In this appeal, Fusion challenges the order denying its petition to compel arbitration.  Fusion argues reversal is required because the trial court deprived it of a meaningful opportunity to present evidence establishing the validity of the purported arbitration agreement between the parties; specifically, evidence showing that Moran

---

[1]  As noted *post*, this lawsuit was also brought against one other party; that portion of the lawsuit has been dismissed.

1

electronically signed the agreement. Fusion also challenges the related order denying its motion for relief under Code of Civil Procedure section 473, subdivision (b).[2] Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Given the limited issue raised on appeal, we briefly summarize the pertinent facts and procedure.

*Parties and Pleadings*

Fusion is a company in the business of, among other things, creating marketing and advertising designs, displays, and signs. At all relevant times, Fusion conducted business on a nationwide basis and procured "workers" from Avitus, Inc. (Avitus).

In March 2018, Fusion hired Moran as a non-exempt employee; her duties included (but were not limited to) billing, answering telephone calls, reconciling accounts, and assisting with orders and invoices from the production department. In September 2019, Moran ceased working for Fusion.

In September 2020, Moran filed a class action complaint against Fusion and Avitus, alleging numerous wage and hour claims under the Labor Code (e.g., failure to pay overtime wages (Lab. Code, §§ 510, 1194)), and a claim under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). A first amended class action complaint (the operative complaint) was filed in November 2020, which added claims for civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Labor Code, § 2698 et seq.).

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

In December 2020, Fusion and Avitus answered the operative complaint by way of a general denial. They also asserted 18 affirmative defenses, none of which alleged the existence of an agreement to arbitrate the claims asserted in the operative complaint.[3]

In January 2021, Avitus was dismissed from this action without prejudice pursuant to a joint stipulation filed by the parties. As part of that stipulation, the parties agreed that Avitus was not a proper defendant because it "did not engage, suffer, or permit [Moran], putative class members, and aggrieved employees to work in this instance. Rather, . . . [it] . . . served as a Professional Employer Organization for . . . Fusion . . . and provided payroll services only."[4]

*Petition to Compel Arbitration*

In May 2021 (eight months after this action was commenced), Fusion's counsel (William Buus) sent an e-mail to Moran's counsel stating that he had recently learned "Moran executed an arbitration agreement, agreeing to submit to a final, binding arbitration any and all claims she may have against Fusion . . . arising out of her employment with it." The e-mail further stated that, "failing any informal resolution of . . . Moran's claims and a dismissal of the lawsuit," Fusion would move to compel arbitration. The purported arbitration agreement was attached to the e-mail. Thereafter, counsel for the parties exchanged e-mails (which are not included in the appellate record) about the

---

[3] "An agreement to arbitrate is an affirmative defense to claims asserted in a lawsuit." (*Oregel v. PacPizza, LLC* (2015) 237 Cal.App.4th 342, 355; see *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558, ["At a minimum, the failure to plead arbitration as an affirmative defense is an act inconsistent with the later assertion of a right to arbitrate"].) A defendant may file a petition to compel arbitration in lieu of an answer to the complaint. (*Sargon Enterprises, Inc. v Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 766-767; § 1281.7.)

[4] The operative complaint alleged that Avitus was a " 'labor contractor' within the meaning of Labor Code section 2810.3" that provided "workers" to Fusion, and that Avitus "employed [Moran] and other similarly situated and aggrieved employees within the State of California."

agreement. According to Buus, Moran's counsel "argued that [Fusion] had waived arbitration, that [Moran] would not agree to arbitrate her claims, and that [Moran] desired to still pursue the action, including the PAGA claim(s)."

In June 2021, Fusion filed a petition to compel arbitration, arguing that Moran agreed to arbitrate any claims she had against Fusion " 'aris[ing] out of the employment context.' "[5] Fusion filed two declarations in support of its petition, a declaration from its chief executive officer, Loren Hanson, and a declaration from Buus. Hanson's declaration stated that Moran was hired on or about March 29, 2018, and electronically signed an arbitration agreement "as part of the hiring process," which was "saved and stored in electronic format in a hard drive controlled by Fusion, in the ordinary course of business, on that date." Hanson, however, did not attach the arbitration agreement to his declaration. Instead, "[d]ue to a clerical error," the agreement was attached as "Exhibit C" to Buus's declaration.

The arbitration agreement, which was set forth in a document written on "Avitus Group" letterhead and titled "Employee Acknowledgement and Arbitration Agreement," identified (in typed text) Moran as the employee, Fusion as the worksite employer, and Avitus Group as the administrative employer. As for dispute resolution, the arbitration agreement stated in pertinent part: "Employee . . . agrees and acknowledges that Worksite Employer . . . and Employee will utilize binding arbitration to resolve all disputes that may arise out of the employment context. Worksite Employer . . . and Employee each agree that any claim, dispute, and/or controversy that either Employee may have against Worksite Employer . . . or that Worksite Employer . . . may have against Employee, arising from, related to, or having any relationship or connection whatsoever with Employee seeking employment with, employment by, termination from, or other association with

---

[5] Fusion alternatively moved for an order staying any claims (e.g., the PAGA claims) that were not "subject to arbitration" until the completion of the arbitration proceedings.

4

Worksite Employer . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act . . . Employee understands by voluntarily agreeing to this binding arbitration provision that Employee . . . and/or Worksite Employer give up their rights to trial by jury." (Boldface & capitalization omitted.) At the end of the document in typed text, Moran's name appears on the employee signature line with the date and time of "3/29/2018 3:10:28 PM GMT." Immediately above the signature line is the following statement: "My signature below attests to the fact that I have read, understand, and agree to be legally bound to all of the above terms." The document does not include a handwritten signature or date.

In opposition, Moran argued (among other things) that Fusion had waived its right to compel arbitration based on its unreasonable delay of nearly eight months in filing the petition, and that Fusion failed to carry its burden to establish the existence of a valid agreement to arbitrate between the parties. In making the latter argument, Moran primarily relied on *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836 (*Ruiz*), which is instructive here. In *Ruiz*, an employer appealed an order denying its petition to compel arbitration after the trial court ruled that it failed to meet its burden of proving the existence of a valid agreement to arbitrate. (*Id*. at pp. 838-841.) Although the employee's name appeared (with the date and time) on an electronic copy of an arbitration agreement ostensibly presented to all new employees (*id*. at p. 840), the court held that this in itself was insufficient to support a finding that the electronic signature was "the act of" the employee (*id*. at pp. 842-844). The court explained that there was "a critical gap in the evidence" because the employer did not explain how the electronic signature came to be placed on the agreement and did not show that the electronic signature could only have been placed on the agreement by a person using the employee's " 'unique login ID and password.' " (*Id*. at p. 844.) This same rationale has been followed in other cases with similar facts. (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1069-1070

5

(*Fabian*); *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 170 (*Gamboa*); cf. *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1062-1063 (*Espejo*) [finding a declaration sufficient where it described in detail the steps the employee would have to take to place his or her name on the agreement and showed it could only have been done using the employee's unique user name and password].)

Relying on *Ruiz*, Moran argued that Fusion had failed to meet its burden to establish a valid arbitration agreement by presenting evidence showing that she signed the agreement; specifically, evidence as to the process by which the agreement was electronically signed (e.g., a description of how Moran signed the agreement). Moran "vehemently dispute[d] both the existence and validity of the purported arbitration agreement," and "insiste[d] that [s]he did not electronically or otherwise agree to arbitrate disputes" with Fusion. Moran filed a declaration averring that she did not recall receiving or signing an arbitration agreement, either in writing or electronically. Moran also filed evidentiary objections to the arbitration agreement and to the declarations submitted by Fusion.

In reply, Fusion argued (among other things) that it had established the existence of a valid and enforceable arbitration agreement because Hanson's declaration properly authenticated the document containing the agreement as a business record under Evidence Code section 1271. In support of its contention that the electronic signature on the document was attributable to Moran, Fusion filed a supplemental declaration from Hanson, which included several documents (attached as exhibits) that Moran purportedly signed during the "new hire process."[6] Without elaboration, Fusion cited *Espejo, supra,*

---

[6] Fusion also filed a supplemental declaration from Buus. In that declaration, Buus explained: "The Arbitration Agreement attached to my [original] declaration as Exhibit 'C,' was intended to be attached to the [original] declaration of . . . Hanson as Exhibit 'C', but by clerical error, it was affixed incorrectly to mine. It is, however, the identical

6

246 Cal.App.4th 1047, for the proposition that "a defendant can show by a preponderance of the evidence that a signature on an arbitration agreement is authentic by use of a supplemental declaration once the authenticity of the signature has been challenged." Fusion argued that "the trustworthiness of the arbitration agreement" was shown by the fact that all of the documents attached to Hanson's supplemental declaration bore "the same electronic date and time stamp as the arbitration agreement."

In his supplemental declaration, Hanson stated: "The hiring process for employees at Fusion involves the employee reviewing and completing paperwork. Much of that process is done via the use of electronic documents and signatures, which allows the employee to sign the document after having the opportunity to review it first. In addition to the arbitration agreement Moran electronically signed on March 29, 2018, . . . Moran also concurrently completed other new hire paperwork which she signed electronically. Attached . . . are true and correct . . . copies of a Direct Deposit Authorization, Employee Information Form, Workers' Compensation Medical Provider Network Information and Notice to Employee. All of these documents bear the same electronic signature time stamp (March 29, 2018 at 3:10:28 p.m. GMT) as the arbitration agreement, which shows that they were reviewed and electronically signed [on] that date." Hanson further stated: "As with the electronically signed arbitration agreement (which attorney Buus disclosed as Exhibit 'C' in his declaration, I am authorized on behalf of Fusion to certify that Exhibit 'D' herein is comprised of true and correct copies of the documents noted above electronically executed by plaintiff Moran on March 29, 2018 at 3:10:28 p.m. GMT, and saved and stored in electronic format in a hard drive controlled by Fusion, in the ordinary course of business on that date."

In July 2021, the trial court issued two separate orders continuing the hearing on the petition to compel arbitration. In the second order, the court authorized Moran to file a

document referenced in . . . Hanson's [original] declaration, and was served on [opposing] counsel in conjunction with Fusion's petition [to compel arbitration]."

7

response (i.e., sur-reply) to the new evidence submitted by Fusion with its reply--the supplemental declarations and the documents attached to Hanson's supplemental declaration.

In sur-reply, Moran argued that the new evidence was inadmissible, as the supplemental declarations filed by Fusion lacked "basic foundation and facts." Moran added that, "under binding California law with basically identical facts, even if all of what presented as purportedly 'new evidence' were to be admitted and considered by this Court, [Fusion] still falls clearly short of authenticating even the most central document, the purported arbitration agreement." In support of this argument, Moran (again) primarily relied on *Ruiz*, *supra*, 232 Cal.App.4th 836. Moran claimed that Fusion had failed to prove the existence of a valid agreement to arbitrate by presenting evidence showing the electronic signature on the agreement was attributable to her, that is, evidence as to the process by which the agreement was electronically signed. Moran also filed objections to the supplemental declarations and the documents attached to Hanson's supplemental declaration.

*Order Denying Petition to Compel Arbitration*

In August 2021, after a hearing, the trial court issued a written order denying Fusion's petition to compel arbitration. The court found that Fusion had failed to carry its burden to establish the existence of a valid agreement to arbitrate between the parties, as Fusion did not show by a preponderance of the evidence that the electronic signature on the purported agreement was "authentic" (i.e., attributable to Moran). In so finding, the court stated that, like in *Ruiz*, *supra*, 232 Cal.App.4th 836, Fusion did not "explain how, or upon what basis it inferred the electronic signature on the agreement was the act of Moran." Instead, Fusion only proffered "conclusory assertions" that Moran was the person who electronically signed the agreement. The court noted that neither of the declarations submitted by Hanson included any facts establishing he had personal knowledge that Moran signed the agreement or "any facts establishing how [Moran's] electronic signature

8

was created," which, like in *Ruiz*, left "a critical gap in the evidence supporting the petition that render[ed] it insufficient to support a finding that the electronic signature was, in fact, the act of Moran." The court also explained why *Espejo, supra,* 246 Cal.App.4th 1047, was factually distinguishable and therefore inapposite. (See *id*. at p. 1062 [concluding that the details in the system administrator's declaration as to the employer's "security precautions regarding transmission and use of an applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement and the [arbitration agreement]" were sufficient to meet the requirements articulated in *Ruiz* and establish that the electronic signature was the act of the employee].) Given Fusion's failure to establish the existence of a valid arbitration agreement, the court did not reach Moran's alternative contention that Fusion waived its right to compel arbitration.[7]

At the hearing on the petition, the court denied Fusion's oral request to submit new evidence to authenticate the arbitration agreement; specifically, a declaration establishing that the electronic signature on the agreement was attributable to Moran. In making this request, Fusion represented that it could submit a declaration "in very short order" that would satisfy the authentication standard articulated in *Ruiz*. Fusion, however, acknowledged that the *Ruiz* court explained that a party moving to compel arbitration could present new evidence with its reply to counter an opposing party's claim that he or she did not recall signing the agreement. Fusion also acknowledged that it could have submitted a declaration from "someone" employed by Avitus to authenticate the agreement, but it decided not "to do that." Instead, Fusion chose to "supplement [Hanson's] previous declaration by saying, yes, this [arbitration] agreement was part of

---

[7] Without elaboration, the trial court overruled Moran's evidentiary objections in a blanket ruling. The court also denied Fusion's request for a statement of decision. Neither of these rulings is challenged on appeal.

what [Moran] did, even though [Moran] said [she] never saw it, and, in fact, here are other documents that only [Moran] would have known the contents of to put on, and that's what was put in, so that was the intent based upon how Moran opposed [the motion] in her declaration." Fusion argued that the authentication procedure described in *Ruiz* was not the only way to authenticate an electronic signature, as "the effect of an electronic signature can be determined from the context of the surrounding circumstances," and that the documents attached to Hanson's supplemental declaration, which included personal information only Moran could have known and the same electronic date and time stamp as the arbitration agreement, showed that the electronic signature on the arbitration agreement was the act of Moran. Fusion suggested that filing a new declaration with its reply (as opposed to a supplemental declaration from a person who submitted a declaration in support of the moving papers) was not appropriate under *Ruiz.*

*Motion for Relief*

Two weeks later, Fusion filed a motion for relief under section 473. Fusion argued that relief from the order denying the petition to compel arbitration was warranted due to an honest mistake of law by its counsel as to the proper procedure for authenticating an arbitration agreement when, as here, the opposing party disputes (via declaration) that the electronic signature on the arbitration agreement is attributable to him or her.

In support of its argument, Fusion explained: "The issue concerning authentication of the subject arbitration agreement that was electronically signed is complex and debatable; counsel for Fusion made an honest, good faith attempt to properly authenticate that agreement while working within the confides [*sic*] of what was deemed to be the appropriate procedure on reply." Fusion claimed that the law was unclear as to whether it could submit evidence from a *new* declarant (here, an employee from Avitus) with its reply, and that the trial court's denial of its request to do so at the hearing was error, as Fusion was denied "a full opportunity to present evidence to establish the agreement's authenticity." While Fusion acknowledged that there was case law (e.g., *Ruiz, supra,*

10

232 Cal.App.4th 836) permitting the submission of a supplemental declaration in reply "to address authenticity" from a person who submitted a declaration in support of the moving papers, "the issue of whether a new declaration from a new declarant could be allowed on reply was never addressed in those cases." (Underlining omitted.) According to Fusion, "[g]iven the lack of clear guidance on this point of procedure, and Fusion's counsel's concern with running afoul of law and motion practice concerning the scope of new evidence allowable on [reply], Fusion's counsel's decision on how to proceed was reasonable, and Fusion should not suffer the harsh consequences of being deprived a full hearing on the merits of its petition to compel arbitration." Fusion added, "To the extent that Fusion's inability to present additional evidence is attributed to the mistake, inadvertence, and/or neglect of Fusion's counsel, such mistake, inadvertence, and/or neglect was honest, reasonable, and made in good faith, especially given the unsettled and/or debatable point of procedure concerning how a petitioning party is required to proceed after an objection is raised to an arbitration agreement's authenticity."

With its motion, Fusion filed a declaration from Hannah Ingham, an associate account manager for Avitus. According to Fusion, this declaration adequately addressed the court's concerns regarding the authentication of the arbitration agreement by explaining "the process employed by Fusion to secure its employees' signatures on documents such as the arbitration agreement," including the procedure that was followed as to Moran. In her declaration, Ingham explained that Avitus provided Fusion certain "outsourced human resources services," including "employee on-boarding" through the "E-Hire computerized system," which allowed employees to complete the new hire process by (among other things) electronically signing documents after creating a unique personal identification number and private password. Ingham also described how such documents were electronically signed by new employees, and averred that, because Moran completed the new hire process, only she could have placed the electronic signature on the document containing the arbitration agreement.

11

In opposition, Moran argued (among other things) that Fusion had failed to show an honest mistake of law or other basis for relief under section 473, subdivision (b). Moran claimed that Fusion was simply seeking to escape the "professional shortcomings" of its counsel to avoid what it deemed to be an inequitable ruling. In making this argument, Moran noted that Fusion's failure to submit a declaration from an Avitus employee was a deliberate decision or choice by its counsel, not a mistake.

In reply, Fusion maintained that relief from the order denying its petition compel arbitration was warranted because the issue of whether it was proper to submit evidence from a new declarant with a reply brief was complex and debatable and Fusion's failure to do so constituted an honest mistake of law.

*Order Denying Motion for Relief*

In October 2021, after a hearing, the trial court issued a written order denying Fusion's motion for relief.[8] The court found that the "neglect, mistake, or inadvertence" of Fusion's counsel was not excusable, since the failure to submit an appropriate declaration on reply to authenticate the electronic signature on the arbitration agreement was not the type of error a reasonably prudent person would have made under the circumstances, but rather "the result of 'professional incompetence, general ignorance of the law, or unjustifiable negligence in discovering the law.' " The court noted that the statements made in the declaration (of Ingham) filed with Fusion's motion "appear to indicate that a reasonably prudent person under the same or similar circumstances would not have made the same error in preparing such a critical piece of evidence."

Fusion timely appealed.

---

[8] The appellate record does not include a reporter's transcript of the hearing on Fusion's motion for relief.

12

## DISCUSSION

### I

### *Petition to Compel Arbitration*

Fusion argues the trial court erred in denying its petition to compel arbitration. Fusion claims the court abused its discretion by depriving Fusion of a meaningful opportunity to present evidence establishing the validity of the purported arbitration agreement between the parties; specifically, evidence showing that Moran electronically signed the agreement. Fusion contends the court should have granted its request, made for the first time at the hearing on the petition, to submit new evidence to authenticate the electronic signature. It adds that, alternatively, the court could have held an evidentiary hearing before ruling on the petition. As we explain, we see no error.

A. *Relevant Legal Principles and Standard of Review*

A party to an arbitration agreement may seek a court order compelling the parties to arbitrate a dispute covered by the agreement. (§ 1281.2) "The validity of an arbitration agreement in California is determined by a petition or motion to compel arbitration." (*Juen v. Alain Pinel Realtors, Inc*. (2019) 32 Cal.App.5th 972, 977.) A petition to compel arbitration is essentially a suit in equity to compel specific performance of the arbitration agreement. (*Spear v. California State Auto. Assn*. (1992) 2 Cal.4th 1035, 1040.)

The right to compel arbitration depends on the existence of a valid agreement to arbitrate. (*Young v. Horizon West, Inc*. (2013) 220 Cal.App.4th 1122, 1128.) "In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) While public policy favors contractual arbitration of disputes, arbitration is a matter of contract and a party who has not agreed to arbitrate a controversy cannot be compelled to do so. (*Espejo, supra*, 246 Cal.App.4th at p. 1057 [the public policy favoring contractual arbitration does not apply to those who are not a party to an arbitration agreement; " ' " 'a party cannot be

13

compelled to arbitrate a dispute that [they have] not agreed to resolve by arbitration' " ' "]; *Avery v. Integrated Healthcare Holdings, Inc*. (2013) 218 Cal.App.4th 50, 59 [courts will not infer that the right to a jury trial has been waived absent a clear agreement between the parties for the arbitration of disputes].)

On a petition to compel arbitration, the trial court must first determine whether an "agreement to arbitrate the controversy exists." (§ 1281.2; *Avery v. Integrated Healthcare Holdings, Inc., supra,* 218 Cal.App.4th at p. 59.) The trial court makes this determination using a summary procedure in the manner "for the making and hearing of motions." (§ 1290.2.) " '[T]he court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.' " (*Gamboa, supra,* 72 Cal.App.5th at p. 164; see also *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

The moving party has the burden of proving the existence of a valid arbitration agreement, while the party opposing the petition has the burden of proving any fact necessary to its defense. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC, supra,* 55 Cal.4th at p. 236; *Gamma Eta Chapter of Pi Kappa Alpha v. Helvey* (2020) 44 Cal.App.5th 1090, 1097.)

Although the burden of persuasion is always on the moving party to prove the existence of a valid arbitration agreement, the burden of production may shift in a three-step process. (*Gamboa, supra*, 72 Cal.App.5th at pp. 164-165.) First, "the moving party bears the burden of producing 'prima facie evidence of a written agreement to arbitrate the controversy,' " which is satisfied by attaching a copy of the arbitration agreement purporting to bear the opposing party's signature. (*Id*. at p. 165.) For this step, it is not necessary for the moving party to follow the normal procedures of document authentication. (*Ibid.*) If the opposing party does not dispute the agreement, nothing more is required for the moving party to meet its burden of persuasion. (*Ibid.*)

"If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then in the second step, the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement." (*Gamboa, supra*, 72 Cal.App.5th at p. 165.) The opposing party may satisfy its burden by testifying that the party never saw or does not remember seeing the agreement or that the party never signed or does not remember signing the agreement. (*Ibid*.)

Once the opposing party's burden is satisfied, the burden shifts back to the moving party to prove the existence of an agreement by a preponderance of the evidence. (*Gamboa, supra*, 72 Cal.App.5th at pp. 166-167.)

"Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (Evid. Code, § 1400.) Civil Code section 1633.9 governs the authentication of electronic signatures. It states, in full: "(a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable. [¶] (b) The effect of an electronic record or electronic signature attributed to a person under subdivision (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law."

Thus, to authenticate an electronic signature on an arbitration agreement, the moving party must show that the electronic signature "was the act of the person" opposing the petition to compel arbitration. (Civ. Code, § 1633.9, subd. (a).) The moving party may make this showing "by presenting evidence that a unique login and password known only to that person was required to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the

15

accompanying security precautions." (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 545; see also *Espejo, supra*, 246 Cal.App.4th at p. 1062; *Ruiz, supra*, 232 Cal.App.4th at p. 844.) A summary assertion in a declaration that the opposing party electronically signed the arbitration agreement is insufficient; there must be facts explaining how the signature "came to be placed" on the agreement. (*Ruiz, supra*, 232 Cal.App.4th at pp. 843-844; see *Fabian, supra*, 42 Cal.App.5th at pp. 1069-1070 [declaration deemed insufficient where declarant only " 'summarily asserted' " that the opposing party " 'entered into' " the agreement and did explain the process used to obtain and verify the electronic signature, including how the agreement was presented to the opposing party, the specific location and time the agreement was signed, and how the signature could have been placed on the agreement by only that party].)

When reviewing an order denying a motion to compel arbitration, the standard of review depends on the basis for the trial court's ruling. (*Fabian, supra,* 42 Cal.App.5th at p. 1066.) If the ruling is based on a finding of fact, we employ the substantial evidence standard. (*Gamboa, supra*, 72 Cal.App.5th at p. 166; *Fabian*, at p. 1066.) If only a question of law is involved, review is de novo. (*Gamboa,* at p. 166; *Fabian*, at p. 1066.)

B. *Analysis*

Here, Fusion satisfied its initial burden by submitting a copy of the document containing the arbitration agreement purportedly bearing Moran's electronic signature. Then Moran met *her* burden to produce evidence challenging the validity of the agreement by filing a declaration averring that she did not recall ever receiving or signing an arbitration agreement. Thereafter, Fusion had the burden of proving by a preponderance of the evidence that the electronic signature was authentic, i.e., attributable to Moran. The trial court found that Fusion failed to satisfy that burden with the new evidence it submitted with its reply brief. Because the court denied Fusion's petition on this basis, we may reverse that decision only if the evidence compels a finding as a matter of law that Moran's electronic signature was authentic. (*Fabian, supra*, 42 Cal.App.5th at pp. 1066-

16

1068.)  Fusion makes no attempt to argue as much in its opening brief and concedes the point in its reply brief.[9]  Instead, Fusion maintains that reversal is required because the court erroneously denied its request, made for the first time at the hearing on the petition, to submit new evidence to meet its burden to establish the authenticity of Moran's electronic signature.  Fusion alternatively suggests for the first time on appeal that the court should have held an evidentiary hearing before ruling on its petition.  We see no basis for reversal.

As a preliminary matter, to the extent Fusion argues the trial court erred by failing to hold an evidentiary hearing, we deem that argument forfeited.  Fusion never requested an evidentiary hearing or objected to the lack of a hearing.  (See *In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1127 [failure to request an opportunity to present live testimony forfeited right to obtain relief on appeal]; *Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 687 [same].)  "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider."  (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178; see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 826 ["an appellate court will ordinarily not consider procedural

---

[9]  In its reply brief, Fusion "acknowledges" that it failed to present sufficient evidence to authenticate the arbitration agreement.  We accept this concession.  Fusion did not submit any evidence from an Avitus employee about the process used to verify Moran's electronic signature, including who sent Moran the document containing the arbitration agreement, how the document was sent to Moran, the specific location where the document was signed by Moran, how Moran's electronic signature was placed on the document, who received the signed the document, how the signed document was returned to Fusion, and how Moran's identification was verified as the person who actually signed the document.  (See *Fabian, supra,* 42 Cal.App.5th at pp. 1069-1070 [identifying the type of evidence an employer can present to support a finding that the electronic signature on an arbitration agreement was " 'the act of' " the employee].)

17

defects or erroneous rulings where an objection could have been, but was not raised below"].)

Fusion has also forfeited its arguments due to its inadequate appellate briefing. In relevant part, Fusion's opening brief asserts: "Some courts have found that, if a dispute as to the existence or enforceability of an arbitration agreement is raised, the better course is for the trial court to receive oral testimony and allow the parties an opportunity for cross-examination so that a factual determination may be made. [Citations.] Other courts have permitted the petitioning party an additional opportunity to brief and submit evidence on the issue of authenticity *after reply paperwork was filed*." Fusion cites three cases in support of these assertions, but fails to explain how and why the cases apply here to compel reversal. Consequently, no further discussion of these matters is required. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 162 [treating matter as forfeited where party cited one case but failed to explain how it applied]; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 [issue deemed abandoned where party cited only general legal principles without applying those principles to the circumstances presented].)

Forfeiture aside, we have reviewed the three cases cited by Fusion--*Hotels Nevada v. L.A. Pacific Center, Inc*. (2006) 144 Cal.App.4th 754; *Ashburn v. AIG Financial Advisors, Inc*. (2015) 234 Cal.App.4th 79; and *Fabian, supra*, 42 Cal.App.5th 1062--and find them to be of no assistance to Fusion. None of the cases holds or suggests that the trial court was *required* to grant Fusion's request to submit new evidence or to order an evidentiary hearing sua sponte. Indeed, whether to hold an evidentiary hearing in connection with a petition to compel arbitration is a matter committed to the trial court's discretion. (See *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413-414 [facts are to be proven by affidavit or declaration and documentary evidence, "with oral testimony taken only in the court's discretion"]; *Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 972 [same].) Further, it is well established in motion

18

practice that good cause must be shown to justify the filing of new material after the applicable deadline. (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657; *Hobson v. Raychem Corp.* (1999) 73 Cal.App.4th 614, 624-625, disapproved on another ground by *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6.) It is equally well established that a trial court has broad discretion to accept or reject late-filed papers, including late-filed evidence. (See *Mackey v. Trustees of California State University*, *supra*, 31 Cal.App.5th at p. 657; *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 262; Cal. Rules of Court, rule 3.1300(d).) In a variety of contexts, including in proceedings to compel arbitration, trial courts have acted within their discretion in refusing to consider materials offered for the first time at the hearing on the motion. (See, e.g., *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1146 [trial court acted within its discretion by denying leave to file reply declarations on the day of the hearing for a petition to compel arbitration]; *Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 320-322 [trial court acted within its discretion in refusing to consider evidence proffered on day of summary judgment hearing].)

On this record, we discern no abuse of discretion. Fusion made no effort in the trial court (or in its appellate briefing) to show that this is the type of case requiring an evidentiary hearing. (See *Rosenthal, supra*, 14 Cal.4th at p. 414 [explaining that it may be an abuse of discretion to deny an evidentiary hearing where the enforceability of an arbitration agreement depends upon which of two "sharply conflicting factual accounts is to be believed" and credibility is at issue, as is common with allegations of fraud].) And "[t]here is simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony." (*Ibid*.) As for Fusion's request to submit new evidence, Fusion did not offer a persuasive rationale justifying its failure to timely present the evidence its counsel mentioned for the first time at the hearing on the petition to compel arbitration. And no

19

good cause to allow the new evidence appears. Indeed, the record reflects that Fusion's counsel made a deliberate decision to submit a supplemental declaration from Hanson with its reply rather than a new declaration from an Avitus employee. When Fusion's counsel made this decision, he was aware of both *Ruiz* and *Espejo*. In opposing the petition, Moran cited *Espejo* and relied on *Ruiz*, and Fusion relied on *Espejo* in reply. Those cases describe the evidentiary showing required to properly authenticate an electronic signature on reply when, as here, the opposing party disputes that the signature on the arbitration agreement is authentic, i.e., attributable to him or her. (See *Ruiz*, *supra*, 232 Cal.App.4th at pp. 843-844; *Espejo, supra*, 246 Cal.App.4th at pp. 1059-1062.)

## II

### *Motion for Relief*

Fusion also argues the trial court erred by denying its related motion for relief under section 473, subdivision (b). Fusion claims it was entitled to relief from the order denying the petition to compel arbitration due to an honest mistake of law by its counsel regarding the proper procedure to authenticate an electronically signed arbitration agreement when the opposing party challenges the authenticity (validity) of the signature. According to Fusion, its counsel reasonably believed that it would be provided an opportunity to present new evidence following the filing of the reply brief. We see no abuse of discretion in denying relief here.

A. *Applicable Legal Principles*

Section 473, subdivision (b), states that a trial court "may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." This portion of section 473 is recognized as invoking the court's discretion. (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838; *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 254 (*Zamora*).)

20

" 'A party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief.' [Citation.] In determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent *person* under the same or similar circumstances" might have made the same error." ' [Citation.] In other words, the discretionary relief provision of section 473 only permits relief from attorney error 'fairly imputable to the client, i.e., mistakes anyone could have made.' [Citation.] 'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice' " (*Zamora, supra,* 28 Cal.4th at p. 258.)

An honest mistake of law is a valid ground for discretionary relief when the legal problem posed is "complex and debatable," but not when the mistake results from professional incompetence, general ignorance of the law, or unjustifiable negligence in discovering the law. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc*. (2013) 217 Cal.App.4th 1096, 1111 (*Toho-Towa*); *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206; *Anderson v. Sherman* (1981) 125 Cal.App.3d 228, 238.) "The issue of which mistake of law constitutes excusable neglect presents a question of fact. The determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law." (*Toho-Towa, supra,* 217 Cal.App.4th at p. 1111.)

A ruling on a motion for discretionary relief under section 473 is not subject to reversal unless there has been a clear abuse of discretion. (*Zamora*, *supra*, 28 Cal.4th at p. 257; *Casey v. Hill* (2022) 79 Cal.App.5th 937, 961-962.) " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

21

B. *Analysis*

It again appears Fusion has forfeited its claim of error by failing to provide meaningful legal analysis supported by citation to pertinent authority. In its opening brief, Fusion identified general principles of law concerning a mistake of law for purposes of discretionary relief under section 473, subdivision (b), but failed to adequately explain how or why those principles apply here. Indeed, Fusion made no effort to explain why its failure to determine the correct law was reasonable and justifiable. Instead, Fusion argues, without elaboration, that reversal is required because the "procedure to authenticate" Moran's purported electronic signature was "not clear," but rather "fairly complex and certainly debatable." We need not and do not consider points supported by citation to general legal principles or legal authority without application of those principles or authorities to the case at hand. (*Landry v. Berryessa Union School Dist., supra,* 39 Cal.App.4th at p. 699.) It is an appellant's burden to establish error through reasoned arguments, not conclusory assertions. (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 ["Contentions are waived when a party fails to support them with reasoned argument."].)

In any event, Fusion has not carried its burden to show reversible error. We see no abuse of discretion in the trial court's determination that the failure of Fusion's counsel to submit readily available evidence with Fusion's reply to the petition to compel arbitration (as demonstrated by the submission of the evidence with Fusion's motion for relief) was not based on an honest mistake of law that a reasonably prudent person in the same or similar circumstances might have made, but rather conduct falling below the professional standard of care. The "mistake" made by Fusion's counsel did not involve a complex or debatable legal issue or unsettled law. Instead, the mistake was one of ignorance of the law or unjustifiable negligence in discovering the governing law, neither of which provides an appropriate ground for relief. (See *Toho-Towa, supra*, 217 Cal.App.4th at p. 1112 [trial court did not abuse its discretion in denying relief under section 473 based on the

22

attorney's excusable neglect where the attorney failed to introduce readily available evidence that supported its client's position because it was not a mistake that a reasonably prudent person in the same circumstances might have made]; *Wiz Technology, Inc. v. Coopers & Lybrand LLP* (2003) 106 Cal.App.4th 1, 17 ["Section 473 cannot be used to remedy attorney mistakes, such as the failure to provide sufficient evidence in opposition to a summary judgment motion. . . . Counsel's failure to understand the type of response required or to anticipate which arguments would be found persuasive does not warrant relief under section 473"].)

As noted *ante*, the *Ruiz* and *Espejo* cases-- decided in 2014 and 2016, respectively-- clearly describe the evidentiary showing required to authenticate an electronic signature on reply to a petition to compel arbitration when, as here, the opposing party disputes that the signature on an arbitration agreement is attributable to them. (See *Ruiz*, *supra*, 232 Cal.App.4th at pp. 843-844; *Espejo, supra*, 246 Cal.App.4th at pp. 1059-1062.)[10] Indeed, on appeal, Fusion concedes that the "not difficult" standard for authenticating an electronically signed arbitration agreement is set forth in *Ruiz*, which was decided over six years before Fusion filed its reply in this case. And there is nothing in *Ruiz* or *Espejo* suggesting that the *only* evidence that may be presented in connection with a reply brief is a supplemental declaration from a person who filed a declaration in support of the moving papers.[11] Fusion has not cited, and our independent research has not disclosed, any

---

[10] At the time Fusion filed its reply brief in June 2021, there was another published case following the authentication procedure described in *Ruiz*: *Fabian, supra*, 42 Cal.App.5th 1062. (See *id*. at pp. 1067-1070.) Fusion, for its part, has not directed us to any authority overruling or calling into question this procedure.

[11] The only relevant evidence offered by Fusion in support of its motion for relief was the declaration of an attorney. According to that declaration, "neither *Ruiz* nor *Espejo* offer any guidance on the procedure for submitting evidence on reply from a new declarant— especially a non-party declarant," and "without any proper guidance from the *Ruiz* and *Espejo* cases on this specific issue, [counsel] made the mistake of not simply submitting

authority holding as much. The record does not reflect that Fusion's counsel was suffering under a reasonable misconception of the governing law. Fusion offered no plausible explanation justifying its counsel's failure to determine the correct law.[12]

In short, the trial court acted well within its discretion in concluding that discretionary relief was not warranted under section 473, subdivision (b).

## DISPOSITION

The orders denying the petition to compel arbitration and the motion for relief are affirmed. Moran shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/<br>
Duarte, Acting P. J.

We concur:


/s/<br>
Boulware Eurie, J.


/s/<br>
Wiseman, J.[*]

---

the declaration from the new declarant—the third party payroll company, Avitus, Inc.—with Fusion's reply papers."

[12] In light of the conclusions we have reached, we need not and do not consider any of the other arguments raised by the parties.

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.